NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 9 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANTON WOOD ROBERTS, SSN: XXX-XX-8377, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant-Appellee. | No.    18-35447 <br><br> D.C. No. 1:16-cv-00158-TJC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Timothy J. Cavan, Magistrate Judge, Presiding

Submitted June 5, 2020[**]
Portland, Oregon

Before:  TASHIMA, BERZON, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS

Anton Roberts appeals the district court's judgment affirming the Social

Security Administration's final decision to deny Roberts's application for disability

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

benefits. In reaching its determination that Roberts was not disabled, the Administrative Law Judge ("ALJ") made an error that was not "inconsequential to the ALJ's determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). We reverse and remand.

1. The ALJ impermissibly discounted Roberts's testimony. If "there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation and internal quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). None of the reasons provided by the ALJ here for rejecting Roberts's testimony was clear and convincing.

In particular, the ALJ erred when she concluded that Roberts's testimony was less than fully credible because Roberts struggled to adhere to his medication regimen, and because, in the ALJ's view, there was evidence in the record contradicting Roberts's assertion that his noncompliance was the result of his inability to afford his medication. If a claimant suffers from a mental illness, as Roberts does, a general failure to adhere to prescribed medical care is not an adequate ground for discounting the claimant's testimony. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *see also Garrison v. Colvin*, 759 F.3d 995,

2

1018 n.24 (9th Cir. 2014).

In the same vein, although there was evidence in the record that Roberts gambled and made discretionary purchases at times when he asserted he could not afford his medication, that spending appears linked to Roberts's mental health issues. The record demonstrates that Roberts was impoverished, and, unlike other claimants, *see, e.g., Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir 2012), Roberts generally *was* compliant with his medication and maintained his regular counseling visits.

The ALJ's other reasons for discounting Roberts's testimony—that Roberts was inconsistent in describing when his seizure activity recurred and that Roberts's medical record did not support his assertion that he experienced tendencies toward violent thoughts—also fail to meet the clear and convincing standard. Roberts's description of the recurrence of his seizures reflected his complicated seizure history. And his medical record contains a number of examples of Roberts noting potentially violent impulses.

2. The ALJ's credibility determination was not harmless. Crediting Roberts's testimony may affect the weight the ALJ affords to the opinions of Roberts's treatment providers, *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014), and the ALJ's assessment of whether Roberts meets one of the listing criteria or, if Roberts does not, of Roberts's Residual Functional Capacity.

3

**REVERSED AND REMANDED.**



COLLINS, Circuit Judge, dissenting:

In my view, substantial evidence supports the determination of the Administrative Law Judge ("ALJ") that Anton Roberts' statements about his symptoms and limitations were "not entirely credible." Finding no other error, I would affirm the district court's judgment upholding the Social Security Commissioner's denial of benefits. Because the majority holds otherwise, I respectfully dissent.

1. The ALJ found that Roberts' "medically determinable impairments could reasonably be expected to cause" the symptoms he claims, but the ALJ also concluded that Roberts' testimony "concerning the intensity, persistence and limiting effects of these symptoms [was] not entirely credible." Absent affirmative evidence of malingering, we have held that in such situations the ALJ must provide "clear and convincing" reasons for the adverse credibility finding. *Carmickle v. Commissioner of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citation and internal quotation marks omitted). In turn, the ALJ's factual findings in support of those reasons must be supported by "substantial evidence in the record." *Id.* at 1161; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Accordingly, as long as there is a permissible reading of the evidence that supports the ALJ's "clear and convincing" reasons to doubt Roberts' credibility, we cannot set aside the ALJ's credibility determination. Under these standards, I find no basis for setting aside the ALJ's decision here.

a. We "have long held" that an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" constitutes a "clear and convincing" reason to find a claimant not credible. *See Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) (simplified). In this case, it is undisputed that Roberts did not adhere to his medication regimen, despite the fact that medication improved his conditions. *See* Mem. Dispo. at 2. Roberts asserted that his failure to take his medications was attributable to a lack of funds, but the ALJ declined to credit that assertion in light of Roberts' other expenditures within the same time period. If supported by substantial evidence, the ALJ's explanation is a valid and clear and convincing reason to doubt Roberts' credibility. *See Flaten v. Secretary of Health & Hum. Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (upholding the ALJ's adverse credibility finding when the petitioner "claim[ed] that lack of money prevented her from seeking help," but simultaneously had enough funds to seek treatment for other medical symptoms).

2

Here, there is substantial evidence in the record to support the ALJ's conclusion on this point. Roberts testified that he gambles small amounts of money once a week, but he also reported other, more significant instances of gambling. He reported that in February 2014 he had won $85.00 gambling "and spent it all," and he also stated that in December 2014 he had "[s]pent big bucks at the Casino." He took a road trip to Texas in 2013, and a long bus trip within Montana in November 2014. On September 10, 2014, he broke his computer in anger, but by October 8, 2014, he had bought a replacement laptop for $185.00. On January 15, 2015, Roberts explained that he "got paid today and I did the wrong thing" by "decid[ing] to spend my money on my computer." This evidence is such that "a reasonable mind might accept [it] as adequate to support" the conclusion that Roberts' symptoms were not severe enough to cause him to prioritize his medication over other items. *Richardson*, 402 U.S. at 401.

In reaching a contrary conclusion, the majority improperly reweighs this evidence and speculates that Roberts' failure to adhere to his medication plan was actually due to his mental illness. *See* Mem. Dispo. at 2–3. This contention is curious, because Roberts' brief in this court does *not* even argue that his failure to follow his medication regime was due (as the majority would have it) to mental-illness-induced money mismanagement; rather, his contention is that there is insufficient evidence in the record to support the ALJ's conclusion that Roberts

3

had a greater ability to pay for medication than he claimed. But in all events, the majority's open reweighing of the evidence ignores the well-settled rule that, where "evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's [credibility] finding is supported by substantial evidence, the court 'may not engage in second-guessing.'") (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ].").

To the extent that the majority suggests that, as a matter of law, a failure to adhere to treatment is not a proper basis for discounting the credibility of a claimant who suffers from mental illness, *see* Mem. Dispo. at 2, there is no support for this view. Our decision in *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), addressed the import of a *doctor's* diagnosis of a "severe depressive disorder" despite there being no prior "findings or complaints relative to a mental disorder." *Id*. at 1464–65. In the course of explaining why the ALJ had failed to adequately explain why he rejected that diagnosis, we observed that persons with mental illness often do not seek treatment at all. *Id*. at 1465. *Nguyen* has no bearing on this case, which involves the credibility of a claimant who had long been seeking

4

treatment for mental problems. And the majority's reliance on *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014), is equally unavailing. In *Garrison*, we stated that "we do not punish the mentally ill for occasionally going off their medication *when the record affords compelling reason* to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Id.* (emphasis added). Here, the record does not provide a "compelling reason" to reject the ALJs conclusion; on the contrary, the record supports reasonable competing inferences, and we may not substitute our judgment for the ALJ's.

b. The ALJ also rested her adverse credibility finding on the conclusion that Roberts was exaggerating his claimed "tendencies of violence," because the record "did not show any evidence of violence during the alleged period of disability." Such inconsistencies between a claimant's asserted limitations and his actual conduct "provide[] [a] clear and convincing reason[] to reject [the claimant's] subjective testimony," *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009), and there is substantial evidence in the record to support this finding. Roberts testified that he had tendencies of violence toward other persons and toward himself, but the only instance of aggressive conduct in the record was when he broke his computer. Roberts does not point to any evidence in the record suggesting any actual violence toward himself or other people. Whether we would have reached the same conclusion or not, the ALJ permissibly concluded

5

on this record that the discrepancy between Roberts' testimony and his conduct suggests that he is successfully able to control his anger and that his allegations of the severity of his impairment are not credible.

c. The ALJ also concluded that Roberts had not been entirely consistent as to when he claimed to have resumed having seizures, correctly noting that he had stated during one 2014 medical examination that they had resumed in 2013, but in another statement in 2013, he claimed that they had resumed six years previously. Even if we would not have weighed this evidence the same way, this is a permissible reading of the record, and such a contradiction provides a clear and convincing reason to reject Roberts' testimony. *Valentine*, 574 F.3d at 693.

d. The ALJ also concluded that Roberts' descriptions of the frequency of his seizures varied considerably, but this finding is not supported by substantial evidence. In drawing this conclusion, the ALJ relied on Roberts' July 2014 statement that his seizures were occurring two to three times per month, which the ALJ thought was inconsistent with his prior statements stating that the seizures had occurred much more frequently. This reasoning, however, overlooks the fact that, on its face, Roberts' July 2014 statement stated that "his seizures have *decreased* to about 2 to 3 seizures total per month" (emphasis added). Because the latter statement itself described the then-current rate of seizures as a "decrease[]" from prior levels, that statement cannot reasonably be viewed as inconsistent with his

6

prior assertions of a more frequent rate of seizures. But given that the ALJ's three other reasons for doubting Roberts' credibility were valid and amply support the underlying credibility determination, any error with respect to this issue is harmless and does not require remand. *See Carmickle*, 533 F.3d at 1162–63.

2. Roberts also contends that the ALJ erred at step three of the disability analysis by failing to adequately address the criteria set forth in Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 1, §§ 12.02(C) and 12.04(C). Because this issue was not raised in the district court, it is forfeited. *See Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004).

3. Roberts also challenges the ALJ's failure to obtain a medical expert in order to further develop the record. In my view, there was no abuse of discretion. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (simplified). Roberts emphasizes the additional medical records that were submitted after the State agency psychologists had rendered their opinions, but the ALJ did not abuse her discretion in implicitly concluding that these additional records (some of which were cited in her decision) did not create a sufficient ambiguity or inadequacy to warrant a medical expert. And to the extent that Roberts now contends that a medical expert was needed to determine whether the

7

criteria in §§ 12.02(C) and 12.04(C) were satisfied, that contention was not raised in the district court and is forfeited.

4. Finally, Roberts challenges the adequacy of the examination of the vocational expert, asserting that the ALJ's hypothetical questions did not include relevant functional limitations. But in making this claim, the only evidence in the record that Roberts points to as establishing specific limitations that apply in his particular case and that were assertedly overlooked by the ALJ are those contained in the records from a vocational counselor. This argument was not sufficiently preserved in the district court and is therefore forfeited. But in any event, it would not require a remand here, because the limitations in the ALJ's residual functional capacity finding are consistent with these records.

Finding no error, I would affirm the district court's judgment upholding the Secretary's denial of benefits. I respectfully dissent.